**SO ORDERED.**

**SIGNED this 14 day of November, 2024.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:                                                                  CASE NO. 24-00258-5-DMW

**ISLAND BREEZE GRILL, INC.**
                                                                              CHAPTER 11
         DEBTOR

**ORDER DENYING RELIEF FROM CONFIRMATION ORDER**

This matter comes before the court upon the Motion for Relief from Order Confirming Plan (Rule 60(b)) or, in the Alternative, Motion for Correction of Order Confirming Plan (Rule 60(a)) ("Rule 60 Motion") filed by Signature Capital, LLC ("Signature Capital") on October 8, 2024 and the Responses filed by Island Breeze Grill, Inc. ("Debtor") and the United States of America, on behalf of the Internal Revenue Service ("IRS") on October 22, 2024. The court conducted a hearing on November 6, 2024 in Raleigh, North Carolina. Kevin L. Sink, Esq. and Andrew D. Irby, Esq. appeared for Signature Capital, John G. Rhyne, Esq. appeared for the Debtor, Benjamin J. Higgins, Esq. appeared for the IRS, and Kylie B. Beresford, Esq. appeared for the United States Bankruptcy Administrator. The Debtor's principal, Doris Johnson ("Ms. Johnson") testified pursuant to a subpoena issued by Signature Capital. After consideration of the court

record, evidence presented, and arguments of counsel, the court makes the following findings of fact and conclusions of law:

## Background

The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on January 26, 2024 for the purpose of reorganizing its operations and debt associated with commercial real property ("Real Property") located at 220/222 Poindexter Street, Elizabeth City, Pasquotank County, North Carolina.

On February 20, 2024, the IRS filed a Proof of Claim for $228,628.21 for taxes assessed for tax years 2011 through 2018, with $210,333.46 designated as secured by Notices of Federal Tax Liens ("Tax Liens") filed during those years with the North Carolina Secretary of State and the Pasquotank County Clerk of Superior Court. The Tax Liens encumber all the Debtor's assets, including the Real Property.

On May 20, 2024, Signature Capital filed a Proof of Claim for $639,130.00 due under a Commercial Promissory Note (For Investment Purposes) ("Signature Capital Note") executed by the Debtor on May 27, 2022 for the original principal amount of $540,000.00. The Signature Capital Note is secured by a Deed of Trust and Assignment of Rents ("Signature Capital Deed of Trust") encumbering the Real Property and recorded with the Pasquotank County Register of Deeds on June 1, 2022.

The Signature Capital Note memorializes a loan ("Signature Capital Loan") from Signature Capital to the Debtor for the purpose of refinancing prior debt obligations. As a condition of making the Signature Capital Loan, Signature Capital required that the IRS subordinate its Tax Liens to the Signature Capital Deed of Trust. Ms. Johnson applied to the IRS for a certificate of subordination, and on May 5, 2022, the IRS provided to Ms. Johnson a Conditional Commitment

to Subordinate Federal Tax Lien which indicated that upon receipt of $83,461.40, a copy of the Signature Capital Deed of Trust, and a copy of the final settlement statement for the Signature Capital Loan, the IRS would subordinate the Tax Liens as to the Real Property to the Signature Capital Deed of Trust.

The Signature Capital Loan closed on May 27, 2022, and a Settlement Statement executed by William T. Davis, Esq. ("Settlement Agent") indicates that a "Subordination Fee" of $83,461.40 was disbursed to the IRS from the loan proceeds. On June 21, 2022, the IRS executed a Certificate of Subordination of Property from Federal Tax Lien ("Subordination"), subordinating the attachment of the Tax Liens on the Real Property to the Signature Capital Deed of Trust. Neither the IRS, Signature Capital, nor the Settlement Agent filed the Subordination with the Pasquotank County Clerk of Superior Court; however, Ms. Johnson received a copy of the Subordination, most likely from the Settlement Agent. Although Ms. Johnson recognized that procuring the Subordination was necessary to the Debtor obtaining the Signature Capital Loan, it is unclear from her testimony whether she understood its effect on the priorities of liens on the Real Property held by Signature Capital and the IRS.

On July 2, 2024, the Debtor filed its Second Amended Plan of Reorganization ("Plan"). The Plan designates the IRS as the Class 3 Creditor and Signature Capital as the Class 5 Creditor and states that the IRS has a first priority lien and Signature Capital has a second priority lien on the Real Property. The proffered lien priorities were based upon information obtained by the Debtor's bankruptcy counsel from Ms. Johnson and a search of public records. The Plan provides for liquidation of the Debtor's assets, predominantly the Real Property, with the net proceeds after payment of administrative costs and satisfaction of a claim secured by personal property included

in the sale being paid first to the IRS and then to Signature Capital, to the extent that funds remain available.

On July 25, 2024, Signature Capital executed a Ballot for Accepting or Rejecting Second Amended Plan of Reorganization through which it rejected the Plan, and on July 26, 2024, Signature Capital filed a Limited Objection to Second Amended Plan of Reorganization and Supplement to Disclosure Statement ("Signature Capital Objection"). The crux of the Signature Capital Objection concerns the proposed process for selling the Real Property, and the Signature Capital Objection does not object to or question the Plan's priority designation of liens on the Real Property.

The court conducted a confirmation hearing ("Confirmation Hearing") on July 30, 2024. Counsel for the Debtor, Signature Capital, and the IRS were present at this hearing, and Ms. Johnson testified on behalf of the Debtor. At the time of the Confirmation Hearing, all counsel were seemingly unaware of the Subordination. The Debtor presented modifications to resolve the Signature Capital Objection, and on August 6, 2024, the court entered an Order Confirming Plan ("Confirmation Order"), confirming the Plan as modified pursuant to 11 U.S.C. § 1129(b).

A month after confirmation of the Plan, on September 5, 2024, counsel for Signature Capital became aware of and received from the Settlement Agent a copy of the Subordination. Subsequently, counsel for the IRS confirmed the legitimacy of the Subordination and the IRS' intent to be bound by the Subordination.

On October 9, 2024, the court entered an Order Allowing Public Sale which approves, over the objection of Signature Capital, the Debtor's sale of its assets for $642,000.00.[1] Signature

---

[1] On October 23, 2024, Signature Capital filed a Notice of Appeal of the Order Allowing Public Sale to the United States District Court for the Eastern District of North Carolina as well as a Motion for Stay Pending Appeal of Order Allowing Public Sale. On November 1, 2024, the court entered an Order Denying Stay Pending Appeal, and on November 5, 2024, Signature Capital and the Debtor stipulated to dismissal of the appeal.

Capital filed the Rule 60 Motion in an effort to alter the distribution of proceeds dictated by the Plan through relief from the Confirmation Order under either Rule 60(a) or Rule 60(b) of the Federal Rules of Civil Procedure, which are made applicable to bankruptcy cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure.[2] The IRS does not object to correction of the payment distribution between it and Signature Capital; however, the Debtor opposes the Rule 60 Motion.

## Discussion

### Rule 60(a)

Rule 60(a) allows a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Under Rule 60(a), courts may "perform mechanical adjustments to judgments, such as correcting transcription errors and miscalculations … [but] may not employ Rule 60(a) to reconsider a matter that has already been decided." *Sartin v. McNair Law Firm PA*, 756 F.3d 259, 265 (4th Cir. 2014). A mistake arising from oversight or omission "occurs when there is an inconsistency between the text of the order or judgment and the district court's intent when it entered the order or judgment … [or] an unintended ambiguity that obfuscates the court's original intent." *Id.* at 265-66. "The relevant test … is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule." *Rhodes v. Hartford Fire Ins. Co.*, 548 Fed. Appx. 857, 859 (4th Cir. 2013) (quoting *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 130 (3d Cir. 2005)).

---

[2] The Rule 60 motion also disputes the validity of one of the Tax Liens which was filed in the name of the Debtor's predecessor in interest; however, the parties chose not to focus on this issue at the hearing and acknowledged that the amount attributable to that Tax Lien is a minimal portion of the IRS' secured claim.

The court rejects easily Signature Capital's argument that the parties' mistake or oversight in recognizing the Plan's failure to consider the Subordination warrants a "correction" of the Confirmation Order under Rule 60(a). The Confirmation Order represents the court's intent based upon the Plan as written and evidence presented at the Confirmation Hearing, and Rule 60(a) does not permit the court to reconsider the parties' substantive rights of lien priorities.

*Rule 60(b)*

Rule 60(b) provides that the court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Signature Capital is correct that the court has previously considered Rule 60(b) relief from an order confirming a Chapter 11 plan. *See In re Coker*, No. 14-00223-5-RDD, 2014 WL 6660370 (Bankr. E.D.N.C. Nov. 21, 2014); *In re Canovali*, No. 09-05342-8-RDD, 2011 WL 307374 (Bankr. E.D.N.C. Jan. 27, 2011). The court is now persuaded, however, that Rule 60(b) does not apply to Chapter 11 confirmation orders, especially when the requested relief would amount to either a revocation of confirmation or material modification of the confirmed plan.

Confirmation of a Chapter 11 plan of reorganization binds all parties in interest to the provisions of the plan and vests all property of the estate in the debtor. 11 U.S.C. § 1141. This court recognizes a confirmed plan as a contract which "is binding on the debtor and all creditors, whether

6

or not they have accepted the plan" *In re Coastline Care, Inc.*, 299 B.R. 373, 378 (Bankr. E.D.N.C. 2003). The effects of confirmation drastically limit a bankruptcy court's post-confirmation jurisdiction, but the Bankruptcy Code contains specific provisions for revoking an order of confirmation or modifying a confirmed plan.

"On request of a party in interest at any time before 180 days after the date of entry of the order of confirmation, and after notice and a hearing, the court may revoke such order *if and only if such order was procured by fraud*." 11 U.S.C. § 1144 (emphasis added). "Section 1144 is the sole basis to vacate or revoke an order confirming a chapter 11 plan … [and] Rule 60 does not provide an end run around section 1144." *In re Mine Hill Anesthesia, LLC*, 658 B.R. 214, 217 (Bankr. S.D. Fla. 2024) (citing *In re Logan Place Props., Ltd.*, 327 B.R. 811, 814 (Bankr. S.D. Tex. 2005)). "[N]umerous courts have held that the 'if and only if' language contained in § 1144 precludes any application of Rule 60(b) or invocation of the Court's equitable powers under § 105 to set aside an order confirming a plan unless fraud is alleged." *In re Smith Audio Visual, Inc.*, No. 11-42026-11, 2013 WL 1279064, at *5 (Bankr. D. Kan. Mar. 28, 2013) (citing *Logan Place Props.*, 327 B.R. at 815; *In re Winom Tool and Die, Inc.*, 173 B.R. 613, 616 (Bankr. E.D. Mich. 1994)). Signature Capital has not alleged nor does the court suspect or find any fraud in procuring the Confirmation Order; therefore, no grounds exist for relief from the Confirmation Order under § 1144.

In holding that Rule 60(b) does not apply to Chapter 11 confirmation orders, the *Logan Place* court recognized that there is a conflict between Bankruptcy Rule 9024's incorporation of Rule 60(b) and § 1144. "When in conflict, the Bankruptcy Code trumps the Bankruptcy Rules." *Logan Place*, 327 B.R. at 815 (citing 28 U.S.C. § 2075 (providing that "rules shall not abridge, enlarge, or modify any substantive right").

Even if the court believed that it could consider Signature Capital's request under Rule 60(b), which it does not, Signature Capital has not established sufficient cause for its requested relief under either Rule 60(b)(1) or (2). In this jurisdiction, consideration of a Rule 60(b) motion proceeds in two stages. *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993). First, the movant must satisfy each of the following three threshold conditions: (1) that the motion is timely; (2) that the movant has a meritorious defense to the action; and (3) that the opposing party would not be unfairly prejudiced by having the judgment set aside. *Id.* (citing *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987)). Second, after meeting these threshold conditions, the movant must satisfy one of the six grounds for relief enumerated in Rule 60(b). *Id.* at 266.

Assuming Signature Capital could satisfy the threshold conditions, the court disagrees that it is entitled to relief under either Rule 60(b)(1) or (2). The United States Court of Appeals for the Fourth Circuit recently interpreted Rule 60(b)(1) as follows:

> The terms "mistake, inadvertence ... or excusable neglect" found in Rule 60(b)(1) are often used interchangeably or in conjunction with each other. A "mistake" under Rule 60(b)(1) occurs when "the judge has made a substantive mistake of law or fact in the final judgment or order," as well as where "a party has made an excusable litigation mistake." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir. 1996). …
>
> The Fourth Circuit has suggested that "neglect" under Rule 60(b)(1) includes "inadvertence, mistake, or carelessness, as well as ... intervening circumstances beyond the party's control." *e.spire Commcn's, Inc. v. Commcn's*, 39 F. Appx. 905, 912 n.7 (4th Cir. 2002) (quoting *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996)). And this Court has defined "excusable" as "'an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission,' including 'the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Thompson*, 76 F.3d at 533 (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). "The most important of the[se] factors … for determining whether 'neglect' is reasonable'" is the reason for the delay. *Id.*, 76 F.3d at 534.

*Justus v. Clarke*, 78 F.4th 97, 108 (4th Cir. 2023).

Relief based on newly discovered evidence, under Rule 60(b)(2) requires the movant to show that—

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) (quoting *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987)). "The movant is *obliged* to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." *Boryan*, 884 F.2d at 771 (quoting *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (emphasis in original)).

Signature Capital asserts that the Plan's failure to recognize the Subordination is a result of a "mutual mistake" of it, the Debtor, and the IRS, with the ultimate blame being cast on the Settlement Agent for failure to record the Subordination and an alleged failure to provide Signature Capital with a copy of the Subordination. At the hearing, Signature Capital also imputed significance on Ms. Johnson's role in applying for and obtaining the Subordination, suggesting that it was her express desire rather than a condition of the Debtor obtaining the Signature Capital Loan. Signature Capital contends that because of Ms. Johnson's layperson knowledge of the Subordination, the Debtor was or should have been aware during the confirmation process that the Plan's designation of priorities between Signature Capital and the IRS is incorrect. Perhaps so, but Signature Capital most certainly should have been aware of the Subordination that was procured

9

at its direction and for its benefit. The Plan was confirmed over six months after the Debtor filed for bankruptcy relief, and Signature Capital participated actively in the case during the three months leading up to confirmation. Even if Signature Capital did not possess a copy of the Subordination, its internal records should have alluded to its existence. Signature Capital presented no evidence that it could not with reasonable diligence have discovered and produced the Subordination prior to the Confirmation Hearing,[3] and its failure to do so does not amount to an excusable mistake or neglect.

The only available avenue for Signature Capital to obtain its desired relief is through a post-confirmation modification of the Plan; however, Signature Capital does not have standing to seek modification. The Bankruptcy Code provides that "[t]he *proponent of a plan or the reorganized debtor* may modify such plan at any time after confirmation of such plan and before substantial confirmation of such plan, …" 11 U.S.C. § 1127(b) (emphasis added). Accordingly, only the Debtor may move for modification of the Plan, but modification might still be impermissible if the Plan is substantially consummated as a result of the completed or imminent sale of the Debtor's assets; now therefore,

It is ORDERED, ADJUDGED, and DECREED that the Rule 60 Motion be, and hereby is, denied.

END OF DOCUMENT

---

[3] Signature Capital did not explain fully how it finally discovered and obtained the Subordination from the Settlement Agent post-confirmation yet managed to cast more blame by noting that the Settlement Agent had been out for some unidentified "extended period" due to health issues and surgery.